**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GEOFFREY TRENT HARPER,<br>Petitioner, | ) |
| vs. | ) Civil Action No. 11-832<br>) Magistrate Judge Maureen P. Kelly |
| JOHN KERESTES, THE DISTRICT ATTORNEY OF THE COUNTY OF FAYETTE, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,<br>Respondents. | ) |

**MEMORANDUM OPINION**

After confessing to attacking the victim, a 54 year old man named Thomas Elliott, Geoffrey Trent Harper ("Petitioner"), was tried and convicted of first degree murder in Mr. Elliott's death and arson and sentenced to life in prison without the possibility of parole. Petitioner has filed this Petition for Writ of Habeas Corpus by a Person in State Custody (the "Petition") seeking to attack these state court convictions.

Petitioner now raises the following grounds on which he claims in the Petition that he is being held in violation of the Constitution, laws or treaties of the United States: "evidence [was] insufficient, state errors denied [Petitioner] a fair trial, trial counsel was ineffective, appellate counsel was ineffective." ECF No. 3 at 7, ¶ 13. Because the state courts addressed these claims on the merits and because Petitioner failed to show that the state courts' adjudication of these claims was contrary to or an unreasonable application of United States Supreme Court precedent, the Petition will be denied. Furthermore, because jurists of reason would not find the foregoing conclusion debatable, a Certificate of Appealability will also be denied.

## I. Procedural History

Petitioner is proceeding pro se. The Petition was filed. ECF No. 3. After filing two Motions for Extension of Time to File an Answer, ECF Nos. 4 and 6, both of which were granted, Respondents filed their Answer, and attached as exhibits most of the state court record. ECF No. 9. After requesting an extension of time in which to file a Traverse, ECF No. 13, which was granted, Petitioner filed his Traverse. ECF No. 16. The parties have consented to the Magistrate Judge exercising plenary jurisdiction. ECF Nos. 12 and 14.

## II. Applicable Legal Principles

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the

Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Supreme Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197. Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision. Williams, 529 U.S. at 412. In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the state court's application of United States Supreme Court precedent was objectively unreasonable. Matteo, 171 F.3d at 890.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

## III. Discussion

### A. The Evidence was Sufficient.

The first ground Petitioner raises is a claim that the evidence was insufficient to support a conviction for first degree murder.[1] Specifically, the only ground raised in the state courts and thus, exhausted and not procedurally defaulted for purposes of federal habeas relief, is the claim that there was not sufficient evidence of intent to commit murder. The Pennsylvania Superior Court addressed this issue on the merits as follows, utilizing the Pennsylvania state test for sufficiency of the evidence:

> In his second issue, Appellant initially contends that the evidence was insufficient to establish that he possessed the specific intent to kill. Brief for Appellant at 10-12. We disagree.
>
> > The standard we apply when reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. . . . . The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. . . .
>
> ***Commonwealth v. Gray***, 867 A.2d 560, 567 (Pa. Super. 2005) (citation omitted).
>
> Here, the trial court aptly disposed of Appellant's contention as follows:
>
> > The evidence here demonstrates that the Appellant purposely bludgeoned the victim's skull, causing four compound fractures

[1] The Petition is not clear as to whether Petitioner is only challenging the sufficiency of the evidence to support his conviction for first degree murder, or whether he is also challenging the sufficiency of the evidence to support his conviction for arson. However, Petitioner does not appear to challenge the sufficiency of the evidence for the arson conviction in either the Petition or in the Traverse. Moreover, even if he did, such a claim of insufficient evidence to support the arson conviction would be both unexhausted and now, procedurally defaulted, given that in the state courts, Petitioner raised only a challenge to the sufficiency of the evidence to support a first degree murder conviction. See, e.g., ECF No. 9-14 at 9 (Petition for Allowance of Appeal to Pennsylvania Supreme Court raising as one of the two questions presented the following: "WHETHER THE VERDICT WAS AGAINST THE EVIDENCE AND LAW SINCE THE COMMONWEALTH FAILED TO ESTABLISH SPECIFIC INTENT TO KILL.").

> and injury to the brain, and the victim's thorax, fracturing seven ribs. The victim was also stabbed in the scapular area of the back seven times, causing the victim's left lung to be perforated, as well as his diaphragm and left kidney. Additionally, the victim's throat had been cut. These wounds caused the death of the victim, and this evidence was more than sufficient to support the first degree murder conviction.

> T.C.O. [i.e., "Trial Court Opinion"], 3/07/08, at 7-8. We agree with the trial court that the evidence was sufficient to establish, beyond a reasonable doubt, that Appellant harbored the specific intent to kill. ***See Commonwealth v. Karenbauer***, 715 A.2d 1086, 1092 (Pa. 1998)( If the defendant knowingly applied deadly force to the victim, his specific intent to kill is as evident as if he expressed the intent to kill at the time the force was applied."). Appellant's argument is wholly without merit.

ECF No. 9-15 at 6 to 7.

Petitioner fails to demonstrate, as is his burden under the AEDPA, that the Superior Court's disposition was contrary to or an unreasonable application of United States Supreme Court precedent. Indeed, the Superior Court's disposition was neither. As the United States Court of Appeal for the Third Circuit has declared: "the test for insufficiency of the evidence is the same under both Pennsylvania and federal law." Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992). Hence, Petitioner cannot show that the Superior Court's disposition was contrary to United States Supreme Court precedent in the first sense, i.e., applying a wrong rule of law. Nor does Petitioner carry his burden to show that the Superior Court's disposition of the insufficiency of the evidence claim was contrary to the United States Supreme Court precedent in the second sense, i.e., reaching a conclusion different from the conclusion reached by the United States Supreme Court in a case which has a set of materially indistinguishable facts. The only United States Supreme Court case cited by Petitioner in connection with this claim is Jackson v. Virginia, 443 U.S. 302 (1979). ECF No. 16 at 3. However, Petitioner fails to show that the facts of his case and the facts of Jackson v. Virginia

are materially indistinguishable. Even if he had however, the result in Jackson v. Virginia was that the Court found sufficient evidence, and so, the result reached therein is not different from the result reached in Petitioner's case.

Nor has Petitioner established that the Superior Court's disposition of the insufficiency of the evidence claim constituted an unreasonable application of United States Supreme Court precedent. The Superior Court utilized state law, which permits the factfinder to infer intent to kill from the use of deadly force on a human being and the state courts found that there was sufficient evidence, including Petitioner's own confession that he attacked the victim, to find that Petitioner utilized deadly force on the victim and thus, permitted the inference that Petitioner intended to kill the victim in satisfaction of that element of first degree murder, which, under state law requires the specific intent to kill. Commonwealth v. Meredith, 416 A.2d 481, 485 (Pa. 1980) ("A well-recognized and generally accepted inference to establish state of mind is that an actor intends the natural and probable consequences of his acts. An offshoot of this principle is that a specific intent to kill may be inferred from the use of a deadly force upon a vital part of the human body."). Accordingly, this claim fails to merit habeas relief.

**B. Petitioner's Miranda Rights were not Violated.**

The next ground that Petitioner raises is that unspecified "state errors denied [Petitioner] a fair trial[.]" ECF No. 3 at 7. The Respondents understood Petitioner to be making a claim that the state courts erred in finding that Petitioner's statements were properly Mirandized and voluntary and, therefore, admissible. ECF No. 9 at 7 ("If this claim refers to the confession given by the Petitioner and a possible violation of Miranda warnings, this argument is entirely without merit. The Petitioner lawfully waived his Miranda Rights by signing two written forms which waived these rights."). In his Traverse, Petitioner did not challenge this understanding of

his claim. See, e.g., ECF No. 16 at 3 to 4 (apparently accepting the Respondents' characterization of this claim as concerning the waiver of Miranda rights and arguing that his confession was not voluntary).

More specifically, Petitioner argues in his Traverse that he was "coerced and intimidated by investigating police officers during the interrogation in order to compel him to provide a false confession." ECF No. 16 at 3 to 4. A hearing on Petitioner's pre-trial motion to suppress Petitioner's statements was held by the state trial court (the "suppression court"), at which Petitioner did not testify. However, the state troopers who took Petitioner's statements did testify. The state suppression court made findings of fact and conclusions of law after hearing the evidence. The state suppression court found that Petitioner had made a statement to Trooper Louis J. Serafini prior to Petitioner being arrested, i.e., prior to being placed in custody and that Petitioner voluntarily drove to the police station and that he was first Mirandized at 9 p.m. and again at 9:09 p.m. ECF No. 9-8 at 2. The suppression court found that Petitioner did not request the assistance of counsel prior to giving any statement after he was Mirandized, nor did Petitioner demonstrate a desire to remain silent and that the interrogating officer did not make threats or promises to induce Petitioner into making any statement and that the officers did not use any physical violence toward Petition. Id., at 2 to 3. Based on these findings of fact, the suppression court concluded as a matter of law that Petitioner did "knowingly and voluntarily waive his right to the assistance of counsel and his right to remain silent during his custodial interrogations. The defendant was properly warned of these rights by interrogating officers prior to any interrogations. The statements given to police . . . were freely and voluntarily given." Id., at 3, ¶¶ (b)3 – (b)4.

The Superior Court likewise addressed this issue on the merits as follows:

> Here, prior to questioning Appellant, Troopers Serafini and Marshall advised Appellant of his ***Miranda*** rights; in response, Appellant signed two written forms that expressly waived those rights. In addition, before Appellant signed the second waiver form, Trooper Marshall personally read Appellant his ***Miranda*** rights, and Appellant stated that he understood he [sic] each individual right. Appellant then signed the second waiver form. The suppression court found that Appellant "did knowingly and voluntarily waive his right to the assistance of counsel and his right to remain silent during his custodial interrogations. [Appellant] was properly warned of these rights by interrogating officers prior to any interrogations." The suppression court further found that the Troopers "did not use physical violence to procure [Appellant's] statements" and "did not make threats or promises to induce [Appellant] to make any statement." Upon review, we find no error on law in the trial court's legal conclusions, which are fully supported by its factual findings and the record. ***See Commonwealth v. Ellis***, 700 A.2d 948, 950 (Pa. Super. 1997) ("In order to determine the voluntariness of a waiver, we must ascertain whether the waiver was the result of an intentional choice that was not subjected to undue governmental pressure. To determine whether the waiver was knowing and intelligent, we focus upon the defendant's cognitive processes, i.e., whether the defendant was aware of the nature of the choice that he made in relinquishing his ***Miranda*** rights.").

ECF No. 9-15 at 5 to 6 (most citations to record omitted).

Petitioner has not explicitly argued that this disposition was contrary to or an unreasonable application of any United States Supreme Court precedent. Even if he had, we do not find the disposition to be contrary to or an unreasonable application of United States Court precedent. Neither do we find that the suppression court's findings of facts to constitute an unreasonable determination of the facts. Accordingly, this ground does not afford Petitioner any relief under the AEDPA.

**C. Petitioner's Counsel were not Ineffective.**

Petitioner's next grounds are that his trial counsel and appellate counsel were ineffective. Petitioner also raised in the state courts a claim that his Post Conviction Relief Act ("PCRA") counsel was ineffective for failing to advise Petitioner that, after PCRA counsel was permitted to withdraw from representation once PCRA counsel filed her no-merit letter, Petitioner could obtain counsel on appeal. Petitioner seems to repeat that claim in his Traverse. ECF No. 16 at 4

to 5. In addition, Petitioner also seems to raise a claim that his PCRA counsel was ineffective in filing the no-merit letter because she did not adequately address his pro se claims.

Petitioner's claims of ineffective assistance of PCRA counsel may be addressed summarily. Petitioner did not have a federal constitutional right to counsel during his state post-conviction proceeding, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), and, therefore, cannot receive habeas relief on a claim that PCRA counsel were ineffective. 28 U.S.C. § 2254(a) (stating, in relevant part, that habeas relief available only on the grounds that state prisoner is in custody in violation of his constitutional rights); § 2254(i) ("[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be ground for relief in a proceeding arising under section 2254."). See also Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Murray v. Giarratano*, 492 U.S. 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *See Wainwright v. Torna*, 455 U.S. 586 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance)"). Accordingly, any claims of PCRA counsel's ineffectiveness are simply not cognizable grounds for relief in federal habeas proceedings and must be dismissed.[2]

---

[2] The only other issue that requires comment is the Supreme Court's recent decision in Martinez v. Ryan, __ U.S. __, 132 S.Ct. 1309 (2012). In Martinez, the United States Supreme Court held, as an equitable matter, and not as a constitutional matter, that the ineffective assistance of post-conviction relief counsel could provide "cause" so as to excuse the procedural default of a claim of trial counsel's ineffectiveness, where the post-conviction proceedings were the first opportunity under state law to raise claims of ineffective assistance of trial counsel. Id. at 1313-21. See also id. at 1321 (Scalia, J., dissent) (noting that the majority based its decision on equitable reasons and not based upon a constitutional right to counsel in state collateral review). Hence, Martinez does not provide that claims of ineffective assistance of PCRA counsel constitute grounds for relief in federal habeas proceedings.

Because Petitioner is not explicit in his claims of ineffective assistance of trial and direct appeal counsel, we presume, as did the Respondents, that the claims of ineffectiveness which Petitioner seeks to raise herein are the same as the claims of ineffectiveness Petitioner raised in the Pennsylvania Superior Court. Those claims of ineffectiveness are as follows:

> A. Whether trial counsel provided ineffective assistance by failing to meet with Appellant a sufficient amount of time to prepare for trial?
> B. Whether trial counsel provided ineffective assistance by failing to investigate and introduce evidence of Appellant's negative motive to kill the decedent?
> C. Whether trial counsel provided ineffective assistance by failing to investigate and properly assert alibi defense asserted by Appellant during investigation?
> D. Whether direct appeal counsel provided ineffective assistance by failing to frame the issue that the verdict was against the weight of the evidence.
> E. Whether PCRA counsel provided ineffective assistance by filing a no merit letter when the claim's [sic] meritorious?

ECF No. 9-22 at 4 to 5.

The Superior Court addressed all of these ineffectiveness claims on the merits. In doing so, the Superior Court utilized the three pronged state law test of ineffectiveness: "(1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." Superior Court slip op., ECF No. 9-22 at 8.[3] This standard has been found to be materially identical to the test of counsel's ineffectiveness definitively announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Werts, 228 F.3d at 203. The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision,

[3] The Superior Court herein cited Commonwealth v. Zook, 887 A.2d 1218, 1227 (Pa. 2005) for this test. This is the same test definitively announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).

evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Id. at 204. Pursuant to the holding of Werts, Petitioner is barred from arguing that the Superior Court's decision applying the Pennsylvania standard of ineffectiveness is contrary to the standard announced in Strickland. Petitioner could argue the second sense of "contrary to," i.e., the Superior Court reached a different result from that of the United States Supreme Court on a set of materially indistinguishable facts.

However, Petitioner has not argued and does not point to any federal Supreme Court decision, in existence at the time that the Superior Court rendered its decision in this case that has a set of facts which are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the Superior Court herein. Williams, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Accordingly, Petitioner has not shown that the Superior Court's decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court, in either of the two senses of "contrary to."

Thus it remains open to Petitioner to show that the Superior Court's decision was an unreasonable application of federal law. Petitioner has not carried his burden to show that the Superior Court's decision constituted an unreasonable application of federal law concerning ineffective assistance of counsel.

As to Petitioner's claim that his trial counsel spent only a short amount of time meeting with him prior to his trial, the Superior Court reasoned that "[m]ere shortness of time spent in conference with a client does not *per se* establish ineffectiveness of counsel. Furthermore, the time actually spent by counsel with an accused is not necessarily related to, and affords no basis

for inferring the extent of total trial preparation." ECF No. 9-22 at 9. Petitioner does not carry his burden to show that this is an unreasonable application of United States Supreme Court precedent. In fact, it appears quite reasonable. See, e.g., United States v. Winchenbach, NO. CRIM. 98-38, 2000 WL 891962, at *3 (D.Me. Jun 30, 2000) ("The brevity of time spend [sic] by a lawyer in consultation with his client, without more, does not establish that counsel was ineffective."); Williams v. U.S., NO. 05-0128-CV, 2005 WL 1861964, at *3 (W.D.Mo. Aug. 3, 2005) ("Williams fails the first prong [of the Strickland test] because the amount of time counsel spends with a client before proceedings is not in itself conclusive as to whether the client received adequate representation."). Hence, this claim of ineffectiveness does not merit relief.

As to Petitioner's claim that his trial counsel was ineffective for failing to bring out that Petitioner had no motive to kill the victim, the Superior Court noted that "[t]he fact that there was no motive for this homicide does not exculpate the accused." Id. at 9. The Superior Court also noted that Petitioner himself took the stand in his own defense and testified that Petitioner got into an altercation with the victim, after the victim allegedly told Petitioner he could not leave until Petitioner performed a sex act, which caused Petitioner to become enraged and attack the victim. The Superior Court concluded that the "jury could have certainly inferred that this was a motive for murder, and therefore, trial counsel was not ineffective for failing to argue that Appellant had no motive." Id., at 10. Petitioner has not shown that this is an unreasonable application of any United States Supreme Court precedent. We find that it is quite reasonable.

As to Petitioner's claim that trial counsel was ineffective for failing to investigate and assert an alibi defense, the Superior Court rejected this claim, noting that Petitioner "testified at trial that he and the victim had an altercation. Appellant testified that shortly thereafter, he left the victim's residence and saw fire trucks going down the road toward the victim's house. By

Appellant's own admission at trial . . . he was actually at the victim's residence. Therefore this issue is without merit." Id., at 10 (citations to the record omitted). Petitioner fails to carry his burden to show that this was an unreasonable application of any United States Supreme Court precedent. Indeed, we find that it was not as counsel cannot be deemed ineffective for failing to raise a meritless defense. Werts v. Vaughn, 228 F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim.").

As to Petitioner's claim that direct appeal counsel was ineffective for failing to properly raise and argue the claim that the verdict was against the weight of the evidence (as distinct from the claim that the evidence was insufficient), the Superior Court rejected this claim, noting that in fact, the "contention is without merit, as we addressed this issue on Appellant's direct appeal." Id., at 10.[4] Petitioner fails to carry his burden to show that the Superior Court's disposition of this claim was an unreasonable application of United States Supreme Court precedent. Nor do we find it to be.

---

[4] Indeed, the Pennsylvania Superior Court on direct appeal of Petitioner's convictions addressed the weight of the evidence claim as follows:

> Appellant also argues that "the verdicts were against the evidence since the testimony concerning the crimes charged was inconsistent and was contradicted by the physical and testimonial evidence." Brief for Appellant at 12. According to Appellant, "[t]he record clearly establishes that the testimony of the witnesses was so contradictory as to render it incapable of reasonable reconciliation and therefore, the Court should refuse to allow the verdict of guilty to stand." Brief for Appellant at 13. Although Appellant does not direct us to any place in the record where such contradictions occur, and fails to provide this Court with a concrete example of inconsistent testimony, we accept Appellant's arguments on their face. Under the law of this Commonwealth, however, it is well established that a challenge to the weight of the evidence "should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Commonwealth v. Widmer***, 744 A.2d 745, 752 (Pa. 2000). We conclude, therefore, that Appellant's contentions, as framed and argued do not entitle him to relief.

Superior Court slip op., ECF No. 9-15 at 7 to 8.

In the alternative, even if we were to conduct a de novo review of all of Petitioner's claims of ineffectiveness (other than claims of PCRA counsel's ineffectiveness, since they are not cognizable here), we conclude that in the face of Petitioner's confession that he attacked the victim, even though he denied stabbing the victim, Petitioner cannot prevail on his claims of ineffectiveness because he could not show prejudice.

Lastly, for the first time, Petitioner asserts in a conclusory fashion in his Traverse that the state court factual findings were unreasonable. ECF No. 16 at 8 to 9. Such a claim was not made in the Petition. Issues raised for the first time in a traverse are waived. United States v. Becerra 164 F.3d 631 (Table), 1998 WL 700539, at *1 (9th Cir. 1998)("Claims raised for the first time in a traverse brief are waived. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507-08 (9th Cir. 1994).")

Even if not waived, we find no merit to Petitioner's conclusory assertion. Petitioner does not specify which factual findings were unreasonable and so we cannot make a determination. However, after carefully reviewing the factual determinations made by the suppression court and the Superior Court in their opinions, we are not convinced that any of the state courts' factual determinations are unreasonable. Hence, this claim, raised for the first time in the Traverse, does not merit relief.

**IV. Conclusion**

For all of the foregoing reasons, the Petition is denied. Furthermore because jurists of reason would not find the foregoing debatable, a Certificate of Appealability is likewise denied.

BY THE COURT,

*s/ Maureen P. Kelly*
MAUREEN P. KELLY
U.S. MAGISTRATE JUDGE

Date: October 4, 2013

cc: All Counsel of Record via CM-ECF

GEOFFREY TRENT HARPER
HH9252
301 Morea Road
Frackville, PA 17932